In the Matter of the Estate of DAVID BELASCO, Deceased.

Surrogate's Court, New York County, January 5, 1932.

*Joseph P. Bickerton, Jr.* [*Sidney R. Fleisher* of counsel], for the City Bank Farmers' Trust Company and Benjamin F. Roeder.

*Samuel Hoffman,* for Reina Belasco Gest.

FOLEY, S. This proceeding is brought by the executors for a construction of the will. David Belasco was a distinguished playwright and producer of dramas. At the time of his death he owned certain plays, of which he was the author, and he also held contracts with other playwrights under which he was granted rights to produce their plays upon the spoken stage. Under certain of these contracts he was also granted an interest in the reproduction of the plays in the form of motion pictures and photoplays. During his lifetime Mr. Belasco produced the play " Tonight or Never " under a contract with the author. On January 27, 1931, they entered into an agreement with the Art Cinema Corporation whereby the latter acquired the motion picture and talking picture rights of the play. The terms of the agreement called for the payment by the corporation of the sum of $60,000, of which $20,000 was to be paid upon the making of the contract, $20,000 on March 27, 1931, and the remaining $20,000 on July 27, 1931.

Mr. Belasco died on May 14, 1931. The first two installments had been paid to him in his lifetime.

The third installment, which became due in July, 1931, after he death, was received and is now held by the executors. Of this amount one-half represented the interest of the decedent, and this other half was payable to the author of the play. The practical question involved is the disposition of the sum of $10,000 received by the executors. Is it to be paid to the sole trustee of the so-called "Literary Trust " or to the two trustees of the residuary trust, or did it pass to testator's next of kin, his daughter, as intestate property?

An analysis of the terms of the will reveals the clearly defined purpose and intent of the testator in the disposition of the different assets of his estate. The literary trust is authorized by paragraph thirtieth, which reads as follows: " I give and bequeath unto Benjamin F. Roeder, in trust, nevertheless, during the life of the said Benjamin F. Roeder, all plays of every kind, nature and description, and all contracts for plays, motion pictures or photoplays owned by me, for the following uses and purposes: To rent, lease upon royalty or with the consent of my daughter, Reina B. Gest, to sell or otherwise dispose of the same, and out of the proceeds arising therefrom

either by sale, lease or rental, to pay unto my daughter, Reina B. Gest, sixty (60%) percent thereof, and to retain for himself forty (40%) percent thereof. Upon the death of the said Benjamin F. Roeder, I give and bequeath unto my daughter, Reina B. Gest, if living at said. time, all of the said plays, contracts for plays, motion pictures or photoplays. Should my said daughter, Reina B. Gest, depart this life before said Benjamin F. Roeder, without leaving issue her surviving, then upon the death of the said Benjamin F. Roeder, the said property herein described shall belong to and become part of my residuary estate."

The residuary trust is created in paragraph 32. It is given in trust "to sell, dispose of and convert the same into cash," to invest the proceeds, and to pay the income to his daughter for life with remainder over on various contingencies. Division of the properties between the literary trust and the residuary trust is carefully and precisely made. The plays and contracts for plays are specifically bequeathed to Mr. Roeder as trustee of the former trust. All the securities and other properties go into the residue. The trustee and the daughter are to share in the proceeds of the literary trust. Responsibility is imposed and bounty is to be shared by the trustee. The latter's special business experience and Mr. Belasco's confidence in him are strongly indicated in the will. Participation in the profits by Mr. Roeder furnishes an additional incentive with expectant benefit to the daughter as the other beneficiary.

Counsel for Reina B. Gest, the daughter, contends that the sum now in dispute did not pass to the literary trust, but became part of the residue, or was undisposed of and passed as intestate property. It is argued by him that paragraph 30 related only to contracts for continuing productions or to contracts made by the trustee after Mr. Belasco's death. It is argued that the transfer and conveyance by Mr. Belasco in his lifetime, under the contract here involved, prevented the passing of the proceeds of the contract into the literary trust. It is also argued that the subject-matter of the asset had been changed and had become a debt in a specific amount due the estate.

These contentions ignore the plain language of paragraph 30. The bequest there to the trustee is of the plays and "all contracts for plays, motion pictures or photoplays owned by me." The contract here comes directly within the latter group. Every benefit and payment which flowed from the contract are covered by the words of gift. No distinction is indicated or made between an agreement for an outright sale of rights with installments unpaid at the date of death, and contracts for lease or rental or royalties or other sharing of profits. It should be noted also that, had the Art Cinema Cor-

poration failed to make the final installment payment, all the rights under the contract would have reverted to the decedent and to the author. Under its terms, also, the motion picture was not to be released for public exhibition until the payments had been completed. If default had occurred, the testator's interest in the play unquestionably would have passed to the literary trust under the terms of the will.

I hold, therefore, that the amount in dispute here should be paid to the literary trustee and is to be distributed by him pursuant to the terms of the will relating to the trust. In view of this conclusion, it is unnecessary to consider the argument that the amount passed as intestate property. In order to avoid further litigation, however, it must now be determined that the residuary gift of all the remaining property was complete (*Matter of Cole*, 235 N. Y. 48, 56) and carried with it any cash left by the decedent other than the cash proceeds of play contracts. The additional instruction to the trustees of the residuary trust to convert the estate into cash was to be complied with when necessary. Its inclusion in the will indicated no intent on the part of the testator to make an incomplete disposition of his estate. Cash and every form of property which might be converted into cash and was otherwise undisposed of became part of the residue.

Submit decree on notice construing the will accordingly.